UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case Number: 23-mj-279** |
| v. | : | |
| | : | |
| | : | |
| **JAMES STYNER,** | : | |
| | : | **Detention Hearing:  October 31, 2023** |
| Defendant. | : | |

### GOVERNMENT'S SUPPLEMENT TO MOTION FOR EMERGENCY STAY & MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this supplement to its Motion for Emergency Stay, filed October 27, 2023, and memorandum in support of its request that defendant James Styner be detained pending trial of this matter pursuant to 18 U.S.C. § 3142(f)(1)(A).  The offenses with which the defendant is charged involve crimes of violence and there is no condition or combination of conditions that will reasonably assure the safety of the community, particularly young girls, if Mr. Styner is released.  Defendant Styner was arrested on October 26, 2023, in the state of California on an arrest warrant issued out of the United States District Court for the District of Columbia in connection with a Criminal Complaint charging him with one count of Sexual Exploitation and Attempted Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a), (e), one count of Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b), and one count of Transfer of Obscene Material to a Minor, in violation of 18 U.S.C. § 1470.  As detailed below, an analysis of the factors set forth in 18 U.S.C. § 3142 leads to the conclusion that detention is the only way to protect the community and to ensure the defendant's future appearance.

1

## FACTUAL BACKGROUND

The United States relies on the facts as alleged in the Government's Motion for Emergency Stay and For Review of Release Order, filed on October 27, 2023. That pleading summarizes the facts of the defendant's conduct with respect to Minor Victim 1 (MV1) in the present case, as well as his conduct with respect to a second minor victim (MV2) in an unrelated California case. The United States will not repeat that information here but submits that the facts alleged in that pleading support the argument that there is no combination of conditions that will protect the community from Mr. Styner.

## APPLICABLE LEGAL STANDARD

The defendant is charged with Sexual Exploitation and Attempted Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a), (e), and Coercion and Enticement of a Minor, in violation of 18 § U.S.C. 2422(b), both of which are crimes of violence. 18 U.S.C. § 3156(c) defines a "crime of violence" to include violations of Title 110, under which § 2251(a), (e) falls, and violations of Title 117, under which violations of § 2422(b) fall. Further, both §§ 2251(a), (e), and 2242(b) give rise to a rebuttable presumption of detention pursuant to 18 U.S.C. § 3142(e)(3)(E), where it is to be *presumed* that no combination of conditions will protect the community or assure the defendant's return. § 3142(e)(3)(E). This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"); *see also United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant does not pose a flight

risk, danger to the community by itself is a sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## **ANALYSIS**

For the reasons that follow, the United States submits that that the defendant cannot rebut the presumption that he shall remain detained, as there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community.

      **A.**      **Nature and Circumstances of the Charged Offense**

The nature and circumstances of the charged offenses are very serious. Defendant Styner is alleged to have "groomed" a 13-year-old girl, someone six years his junior, coercing her into sending sexually explicit videos and photos to him for his sexual gratification. Further, he sent her two sex toys to her home on the other side of the country and directed her on how to use those sex toys in creating sexually explicit content for his consumption. Despite living thousands of miles away from MV1, the defendant was so coercive and manipulative in his communications with MVI, that she feared that he would harm her. Styner even suggested an in-person meetup for sex with the 13-year-old when she told him that her family visited California each year. When she said that she did not want to, he insisted "yes you do" and said that he would pick her up and have sex in his car. While in some scenarios Styner's suggestion of meeting in person for sex could be viewed as just his fantasy, Styner's recent arrest following a sexual relationship with a similarly young girl – again significantly younger than himself – makes this a more frightening reality.

For MV1, the effects of Styner's grooming and coercion will be long lasting. For her, the images she took and videos that she filmed at Styner's direction will be permanently outside of her control. While the United States does not currently have information as to whether MV1's images have circulated beyond Styner's devices, MV1 will live the rest of her natural life knowing that these sexually explicit images of her as a 13-year-old may be circulating the internet forever.

On a broad level, children depicted in sexually explicit images and videos are victimized at the time the images were created, and they are re-victimized each time an individual, like the defendant, views the images for their own sexual gratification. As explained by the Sixth Circuit in a child pornography case:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose

> without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.
>
> ...every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-122 (6th Cir. 2011)(quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

Indeed, Congress has recognized the serious nature of the offenses that this defendant is charged with, and the long-term damage that these crimes can cause, by specifying that these crimes carry a rebuttable presumption of detention.  § 3142(e)(3)(E).  As such, this first factor weighs heavily in favor of detention.

### B. The Weight of the Evidence Against the Defendant

The weight of the evidence against the defendant is very strong.  To date, the United States has recovered digital evidence from MV1's iPad and cell phone, including the explicit chat conversations between MV1 and Styner, as well as some of the sexually explicit images that MV1 recorded at Styner's direction.  Further, the United States has recovered a dildo and costume sent by Styner to MV1's home, along with the corresponding Amazon documentation confirming that these items were sent to MV1 by Styner.  Finally, the United States is in possession of Styner's cell phone, which contains multiple sexually explicit images of MV1.  The digitally preserved sexually explicit images and chats, the sex toy and costume, and the Amazon records all serve to

corroborate MV1's report that Styner "groomed" and coerced her into sending him sexually explicit images for his gratification. Thus, this factor weighs in support of detention.

Contrary to popular wisdom, the weight of the evidence should not uniformly be viewed as the "least important" of detention factors. Instead, a district court has broad discretion to determine the relative weight of each of the four Bail Reform Act factors, including the weight of the evidence against a defendant, when analyzing whether the defendant poses a danger or is a risk of flight. No factor is categorically of greater or lesser weight than the others. As the Second Circuit Court of Appeals recently observed:

> Although § 3142(g) of the Bail Reform Act lists various factors to consider, it says nothing about the relative weight a court should give them when deciding whether to release or detain a defendant. *See generally* 18 U.S.C. § 3142(g). That silence is unsurprising, because the weight given to each factor will inevitably vary from case to case, and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight. What is more, certain factors might interact with one another in a particular case in a way that alters a court's analysis of a defendant's danger to the community or flight risk.

*United States v. Zhang*, 55 F.4th 141, 149-50 (2d Cir. 2022). In *Zhang*, the Second Circuit found that the district court gave appropriate weight to the second factor – the weight of the evidence – in determining that there was "significant evidence" that Zhang had in fact committed the charged murder. *Id.* at 150-51. Affirming the district court's relative reliance on the weight of the evidence in determining dangerousness, the court explained:

> In making a predictive assessment of the defendant's future dangerousness if released into the community, common sense and § 3142(g)(2) aligned with the district court's consideration of the strength of this evidence, especially coupled with the nature of the charged offense. It stands to reason that the more strongly the evidence indicated that the defendant committed the murder, the more likely he poses a danger to the community if released on bail.

*Id.* Similarly, in considering whether the defendant poses a risk of flight, the court explained that where "the evidence against a defendant is strong, it follows that the defendant faces an elevated

risk of conviction (and of the attendant punishment), and therefore may present an elevated risk of flight. *Id.* at 151-52.

The *Zhang* court's analysis holds true here, where the evidence against Styner is very strong, suggesting both a heightened danger to the community as well as an elevated risk of flight. The strength of the evidence strongly supports detention, as it indicates the significant risk of danger posed by the defendant, as well as an elevated risk of flight to avoid accountability on very serious charges.

      **C.**      **History and Characteristics of the Defendant**

The United States appreciates that, at 19 years old, defendant Styner is very young. He is barely the age of majority himself, has no known prior convictions, and still lives at home with his parents. Nevertheless, in the short period of only a few months he is alleged to have sexually victimized two minor girls, manipulating one into producing child pornography for his sexual gratification and threatening to stab the other after impregnating her. In committing these alleged crimes, he has demonstrated a sexual preference for girls significantly younger than himself as well as a savvy at manipulating children via social media to fulfill his sexual fantasies.

Styner's conduct with MV1 and MV2 indicates that he is a threat both to young girls in an online world and is equally a threat to girls with whom he interacts in person. With respect to MV1, the defendant's interactions with her were entirely online, suggesting that any girl crossing paths with him on the internet is at risk of harm. Without ever having to leave the comfort of his own couch, Styner struck up an online "relationship" with MV1, calling her his girlfriend, despite her insistence that she was only 13 years old and was too young for him. While living under his own parent's roof in California, Styner used Amazon to send MV1 multiple sex toys to her District of Columbia home, instructing her to use them when producing sexually explicit images for him

and describing what he wanted to see. When she resisted – even telling him that her parents had found the dildo package he sent to her – he persisted, instructing her to take the package back from her parents and to hide it so as to avoid their interference. The defendant's conduct toward MV1 suggests that he presents a threat of harm to young girls simply sitting on his own couch, in the safety of his own home, all with the power of a digital device and access to social media.

The online threat that the defendant presents is only amplified by his real-world threats of physical violence toward another young girl, and apparent ability to carry out such threats. As described in the Motion for Emergency Stay and Review of Release Order, the defendant is alleged to have engaged in a sexual relationship with a girl in California. According to the arrest report and other documents there, the defendant began a sexual relationship with MV2 when she was only 14 years old, continuing after she turned 15. When, in September of 2023, MV2 informed the defendant that she was pregnant with his child, he demanded that she have an abortion. When she refused, he threatened to stab her, texting "I'll try to make it quick," and "I have to stab you once, actually three times." Styner was later arrested in the vicinity of MV2's home with a multi-tool containing a knife on his person.

The rapidity and breadth of his alleged crimes targeting young girls – just shortly after reaching adulthood himself – gives the United States immense concern about the potential threat the defendant poses to girls he encounters online as well as girls that he may encounter in person. Detention is the only way to ensure that the community is protected from the defendant going forward. Home detention, as ordered by Magistrate Judge Douglas McCormick in California, is not a viable solution to protect the community from the danger Styner presents. The defendant allegedly engaged in crimes against both MV1 and MV2 while living with his parents in the family home. Not only did he engage in a sexual relationship and threaten MV2, later showing up near her home with a multi-tool with knife, but he also engaged in cross-country "grooming" of MV1,

coercing her into sending him sexually explicit material, all without detection or interference from his parents.  Even if Styner is constrained to his home without access to digital devices, the United States has no confidence that his parents will be able to police his online chats twenty-four hours a day, seven days a week, particularly where Styner has evidence enough technological savvy to avoid parental detection thus far and has actively directed MV1 on how to avoid parental interference.  Thus, despite the defendant's young age, his recent history and characteristics weigh in favor of detention.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

Finally, the sexual exploitation and coercion of children presents a serious danger to the community, which results in severe mental, emotional, and physical trauma to the countless children who are victimized by offenders like the defendant and others with a demonstrated sexual interest in children.   It is this type of harm that led Congress to create the statutory presumption of detention in these cases.

That child pornography offenses are serious is a fact noted by the Supreme Court. At least as early as the landmark decision, *New York v. Ferber*, 458 U.S. 747 (1982)*,* the Supreme Court referenced numerous research materials detailing the harm to children as a result of the production and trafficking of child pornography.

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."

Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981). *See also* Child Exploitation 292 ("[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions"); Note,

Protection of Children from Use in Pornography: Toward Constitutional and Enforceable Legislation, 12 U.Mich.J. Law Reform 295, 301(1979)(interview with child psychiatrist) ("The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child"). 458 U.S. 758, n.9.

Moreover, as the Eastern District of New York has found:

> ...the issue is not only defendant's potential abuse of children and his interaction with children if on bail, but also his ability, if he is released on bail, to attempt to possess additional child pornography, or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals.

*United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006). The *Reiner* court further found that there were no conditions in that case that could reasonably assure the safety of the community "[i]n this day and age, with devices such as cellphones, Blackberries, and laptops..." Id. at 399; *see also United States v. Blankenship*, 2008 WL 1925137 (S.D.W.Va. April 29, 2008) (S.D.W.Va. April 29, 2008)(unpublished)(noting the ease of accessing the internet by means of various devices and stating "[t]he Court finds that the evidence clearly and convincingly establishes that, confined to his home and electronically monitored, defendant would not be prevented from obtaining the means to access the internet and attempting again to obtain child pornography and in this poses a danger to children and the community"); *United States v. Doyle,* 2007 WL 1097844, *1 (W.D.Va. 2007)(finding danger of future offenses "especially considering that pornographic images of children are widely available on the internet and can be easily accessed by a personal computer"), conviction rev'd on other grounds, 650 F.3d 460 (2011).

This defendant's multiple alleged crimes against young girls in the concentrated period since becoming an adult illustrate how much damage can be done in a short period of time by

someone sitting in his own home, across the country from his victim, with access to one small digital device. Home incarceration, even under the watchful eyes of loving parents, cannot address the ease with which someone with a little bit of technological savvy can manipulate young children who simply do not have the maturity to resist the coercion of someone a little older and little more worldly-wise. Given the risks that the defendant poses to girls both in the real world and online, there are no condition or combination of conditions that will reasonably keep the community safe and assure his appearance if the defendant is released. As such, this factor weighs heavily in favor of detention.

## CONCLUSION

For all of the reasons set forth above, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that the defendant should be detained pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar. No. 415082


         */s/ Jocelyn Bond*         
Jocelyn Bond
D.C. Bar No. 1008904
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Telephone: (202) 809-0793
Email: Jocelyn.Bond@usdoj.gov